PEREZ FRIDENBERG, RESPONDENT, vs. CALVIN L. ROBINSON, APPELLANT.

1. In an action against the endorser of a draft, he pleaded that "after the plaintiff informed defendant of his discharge as endorser on the draft in said plaintiff's declaration mentioned, the said defendant, in consideration of the said discharge, paid and discharged other pretended demands held by the said plaintiff against the said defendant, which the said defendant did not consider and believe he was legally bound to pay;" On demurrer, *Held*, That this plea does not set up a legal or equitable consideration for a discharge, but only an alleged reason for paying other claims held by plaintiff.

2. The question at issue being whether an agreement made between one who acted as an agent for plaintiff and an acceptor of a draft sued upon, whereby time was given to the acceptor, was authorized by the plaintiff or subsequently ratified by him, and whether there was a

consideration for the agreement; and the court charged the jury, "If you find that the plaintiff did not authorize his agent to *make* the agreement, and that if the agent paid over the amounts (received under the agreement) on his own responsibility, it does not bind the plaintiff," which charge was excepted to; *Held*, That the charge was calculated to confine the inquiry of the jury to too narrow grounds; that one question was whether the alleged agreement was binding upon the plaintiff, and if the jury should find that the plaintiff did not authorize the *making* of the agreement, but that he received a benefit therefrom and knowingly acquiesced in it after it was made, he was equally bound by it as though he had originally authorized it.

3. If, after a bill becomes due, the holder for adequate consideration agrees with the drawee of the bill to give him further time for payment without the concurrence of the other parties entitled to sue such drawee, they will, in general, be discharged from all liability. So, also, if the holder, without such consideration, take fresh security or a new bill, and agree to give time without the concurrence of the other parties. But a mere agreement to delay without consideration will not bind the holder, and therefore will not discharge the other parties.

4. If a Circuit Judge neglects to comply with the provisions of the act of the Legislature approved January 3d, 1848, relating to instructions to juries and the signing and sealing of his charge, and the instructions given or refused, and exception be taken before the Circuit Court to such omission, upon a motion for a new trial, such neglect will be deemed error, and the judgment reversed.

Appeal from the Fourth Judicial Circuit—Duval county.

The plaintiff sued Robinson as endorser of a draft drawn by Hardee & Haddock upon John T. Gilchrist, of New York, and accepted by him, payable to the order of Robinson, dated May 29, 1866, sixty days after date, for one thousand dollars. The defendant pleaded that after protest of the draft, plaintiff informed him that he had made a contract with acceptor for the payment of the draft by the acceptor satisfactory to the plaintiff, and that defendant was discharged as endorser. And for further plea, that after plaintiff informed defendant of such discharge, the defendant in consideration thereof paid and discharged other pretended demands held by plaintiff against him, which defendant did not consider and believe he was legally bound to pay. And for a further and additional plea, defendant says that after

protest of the draft, and before the commencement of this suit, the plaintiff instituted a suit in the State of New York upon said draft, and another draft for $800, drawn and accepted by the same parties, and that on the first day of February, 1867, plaintiff recovered a judgment in said suit, and on the same day the plaintiff, without consent of defendant, entered into a valid agreement with said Gilchrist for the payment of the judgment, by the terms and legal effect of which agreement Gilchrist stipulated to pay and the plaintiff to accept one hundred dollars per month, to be applied on said judgment until the same was fully paid; and that under said agreement Gilchrist paid and plaintiff received on said judgment one hundred dollars per month, and failed to pay the balance due thereon, by reason of his becoming insolvent.

The plaintiff joined issue upon the first mentioned plea, and demurred generally to the second. As to the third plea the plaintiff replied that the alleged agreement was made by one Henry Fridenberg with Gilchrist, without the authority or consent of the plaintiff, and without consideration to him; that the proceedings against the acceptor were instituted at the request of defendant, Robinson, and with his knowltdge and consent; and that said Gilchrist did not become insolvent after the recovery of the judgment, but did so become before the draft became due.

The court sustained the demurrer to the said second plea, and the cause was tried before a jury upon the issues joined.

The court charged the jury as follows:

"This action is brought upon a draft given by Hardee & Haddock upon Gilchrist, of New York, endorsed by C. L. Robinson, to Fridenberg.

"If you find that Fridenberg, after the judgment against Gilchrist, made a new contract, or for a valuable consideration extended the time for the payment of the drafts so as to have prejudiced the rights of the endorser without the consent of the endorsee, or if he extended the time beyond

that time in which the money could have been made by pro-cess of law, without the consent of defendant Robinson, and the acceptor became insolvent, he is not entitled to recover. To the above charge of the court, defendant by his counsel then and there excepted, which constitutes defendant's first exception.

"But should you find that an agreement made with acceptor, Gilchrist, was not made by Fridenberg, or if made by him, or acquiesced in by him, with the knowledge and consent of endorser, Robinson, then he, Robinson, is responsible. The extending of time after judgment is not a valuable consideration, unless there was a condition precedent showing that the plaintiff could not enforce the judgment for want of assets in acceptor. To which charge of the court defendant by his counsel then and there excepted, and this constitutes defendant's second exception.

"If you find that plaintiff did make this agreement, and that Robinson acquiesced in it, (I mean the agreement to pay $100 per month,) then you will find for the plaintiff. To which charge of the court defendant by his counsel then and there excepted, and this constitutes defendant's third exception.

"If you find that plaintiff did not authorize his agent to make the agreement, and that if agent paid over the amounts on his own responsibility, it does not bind the plaintiff. You are to judge from all the evidence as far as it may be possible, and decide from the mass of testimony the truth, and render your verdict accordingly. To which charge of the court the defendant by his counsel then and there excepted, and this constitutes defendant's fourth exception."

A verdict was returned for the plaintiff for the amount of the draft and interest. Defendant moved for a new trial, which was denied, and defendant appealed.

*Bisbee* and *Archibald* for Appellant.

*J. M. & J. H. Baker* for Respondent.

The principle that endorser of a draft or bill will be discharged by a valid agreement between the holder and acceptor, whereby time is given to the acceptor for payment of the bill after it is due, is fully admitted to be good in law.

To operate as such discharge, however, the agreement must be clear that for the time thus given to acceptor by holder, that such time was given with the concurrence of the endorser, and it must also be founded on a valid and valuable consideration. Story on Bills, 426; 12 Wheaton, 554.

An agreement by holder to acceptor to give time for payment and to receive payment from him by instalments, if made without consideration, is *nudum pactum,* and does not discharge endorser. Bayley on Bills, 360; Chitty on Bills, 414.

If there be any evidence of the assent of the drawer or endorser to the security being taken and time given to acceptor, or if, after notice of time given, the drawer or endorser promise to pay, he is precluded from taking advantage of such indulgence. Chitty on Bills, 415, 49.

The endorser consenting to the plaintiff using any means to establish payment from acceptor without prejudice to his right to recover from drawer, was held to amount to an assent to the holder's giving time. Chitty on Bills, 415.

When the acceptor accepts the bill for the accommodation of drawer, and has no effects to withdraw or remedy to pursue when compelled to pay, he therefore suffers no injury by time being given, and cannot defend himself upon that ground. 3 Camp., 281; Chitty on Bills, 416, (note.)

The time of payment must be given by a contract that is binding on the holder of the bill. A contract without consideration is not binding on him, since the delay under such contract is gratuitous and the liability of endorser is not discharged by such contract. Ross on Com. Law, 439.

Receiving part of the debt from the acceptor, after the drawer has been duly fixed, works no prejudice to the holders's rights against drawer and endorser, for it is in aid of all the parties.  3 Kent's Com., 78.

John T. Gilchrist, the acceptor, gave no consideration for the agreement alleged to have been made with him granting additional time for payment.

A judgment does not change the character of the debt; it is a debt still; it is only a step taken to insure payment for the advantage of all.

There was nothing in the agreement which would have prevented execution issuing at any time after it was made.

The judgment at the special instance and request of defendant as endorser, without the knowledge or consent of plaintiff, so that the confession of judgment was no consideration to so moving Fridenberg to give time.

Plaintiff, Fridenberg, refused repeatedly to sue Gilchrist and gave the defendant ample opportunity to pay the draft and take his remedy against the acceptor. Did not pay the draft, but got permission to use Fridenberg's name to sue Gilchrist at his, Robinson's, cost. Defendant procured the services of Henry Fridenberg to bring suit for him; this is not denied. Henry Fridenberg, at the request of Robinson and as his agent, secured a judgment by confession from Gilchrist. Then the procuring judgment was clearly the act of Robinson, with which plaintiff had nothing to do.

Was the alleged agreement part of the same transaction or was it not? If it was, then surely it is equally clear that it was Robinson and not Fridenberg who granted time; if it was not, then time was given after judgment taken, and the confession could not be regarded as a consideration for giving the time.

The plaintiff nowhere admits in the pleading that the alleged agreement was a valid agreement, or in anywise binding on him. It is necessary for the defense to prove not only that the agreement was made by the plaintiff, but that

it was founded on a valid and valuable consideration, or his defence fails. *He has shown neither.*

The evidence of defendant in support of his defence shows:

1. That the alleged agreement with Gilchrist, the acceptor, was made by Henry Fridenberg, but fails to show he had any authority to represent the plaintiff, or any consideration.

2. It shows that John T. Gilchrist was insolvent at the time said draft became due.

3. It shows that he had no funds in his hands at any time to pay the same belonging to the drawer or endorser.

4. It shows that under alleged agreement, a part of the amount due by acceptor was paid to Henry Fridenberg, being and by him used to the credit of plaintiff.

5. Defendant, unsupported by any other fact or circumstance, swears that plaintiff told him that he, defendant, was discharged.

1. In reply, plaintiff shows that after notice of protest to Robinson, he made frequent and earnest demands upon the defendant for payment of the draft, which, on various pretexts and promises, was from time to time postponed.

2. That defendant urged the plantiff to sue Gilchrist and make an effort to collect from Gilchrist and relieve him. That plaintiff positively refused to do, always telling defendant that he looked to him to pay the draft, and that he would not look to Gilchrist, who was known to be insolvent.

3. That defendant, through his clerk, J. C. Greeley, wrote to Henry Fridenberg, after refusal of plaintiff to do so, requesting him to sue J. T. Gilchrist, and promising to pay all costs and expenses to said Henry for his services.

4. That acting under such instructions and promises, Henry Fridenberg took judgment under the alleged agreement without the knowledge of plaintiff.

5. That plaintiff did not know the agreement was made

Fridenberg v. Robinson.

until two months had expired and two instalments paid under it.

6. That as soon as it was communicated to him that the agreement was made, he went to defendant and informed him of it. Defendant, too, had previously been informed. Defendant not only expressed his assent, but his approbation and even gratification.

7. That there was no other evidence to show that plaintiff gave his assent or approbation—he merely acquiesced when he found agreement approved by the defendant.

8. The plaintiff shows positively that defendant, by his promises to pay, procured from him indulgence before and after the agreement was made, and for a long time after the failure of Gilchrist to comply with his agreement, and this testimony is corroborated by Judge Price, then his attorney, also by all the circumstances.

9. Plaintiff directly contradicts the defendant's statement that he told him he was discharged. Judge Price corroborates the plaintiff's, and says that Robinson, when frequent demands were made for payment after Gilchrist failed to pay, " did not refuse to pay," did not claim to be discharged. All the circumstances of the case also corroborate plaintiff's testimony and fully rebuts defendant's testimony as to claim of discharge.

Evidence of defendant's promise to pay was intended as a rebutter of discharge. It shows that defendant did not claim on or upon such defence until after suit.

When instructions in writing are presented to the judge, it is his duty to declare in writing his ruling thereupon as presented, and to pronounce the same to the jury as given or refused. Act of 1848, p. 12, Chap. 140, Sec. 2.

When instructions are requested, it is the duty of the judge to write out and declare to the jury his own ruling. Act 1848, p. 12, Sec. 3.

Parol evidence of an agreement made between the par-

ties subsequent to the contract, is admissible. Ross on Bills, 116 ; 1 Greenleaf, 304.

Plaintiff is not estopped from proving want of consideration of agreement by parol agreement. 1 Greenleaf, Sec. 304.

The alleged agreement was not between the plaintiff and defendant. The question of consideration arises collaterally. It was necessary for defendant to show an agreement founded on a good consideration, or his defence fails.

The charge of the court should be confined to the matters in issue. Hall vs. the State of Florida, 9 Fla., 203.

It is not error for the court to refuse instruction not applicable to the issue or the evidence in the case. 9 Florida, 269.

The court is not bound, on the motion of either party, to repeat what was substantially given in his general charge to the jury. 12 Fla., 563.

RANDALL, C. J., delivered the opinion of the court.

The question first presenting itself in the record is, whether the demurrer to the second plea was properly sustained by the court.

The plea alleges that after the plaintiff informed the defendant of his discharge as endorser of the draft in question, and in consideration of such discharge, he paid other demands held against him, which he did not consider himself legally bound to pay.

This does not charge that the defendant was discharged by the plaintiff in consideration of the defendant's paying the other demands or money, but merely that he voluntarily paid other debts, which he thought he was not bound to pay, because he was discharged from the demand in suit. In other words, it alleges a reason which moved him to pay the

Fridenberg v. Robinson.

supposed doubtful liabilities, but not a consideration for his discharge.

The appellant insists that the plaintiff was estopped by the admission, implied from the demurrer, of the facts alleged in their plea, " and that the admission was inconsistent with the evidence proposed to be given, or to the claim set up," &c.

But we are at a loss to discover the application of this doctrine of estoppel applied to this plea. It does not allege that the subsequent claims so paid were not valid debts of the defendant, nor that the plaintiff induced him to pay such doubtful demands by informing him of the discharge, or promising a discharge. The plea does not contain matter of equitable estoppel, or estoppel *in pais*, and is well met by a general demurrer. There is no pleadable fact alleged which is applicable to the cause of action.

The demurrer, therefore, was well sustained.

The first error assigned is that the court admitted testimony to prove a promise by defendant to pay the draft after he was discharged by the agreement between plaintiff and Gilchrist.

This assumes that defendant had shown that he was discharged, the very point in issue to be decided by the jury. The defendant had testified that he deemed himself discharged upon the information given him by the plaintiff. The plaintiff says he had not discharged defendant or told him he was discharged, and the evidence of a promise to pay, if such was given, was in corroboration of the plaintiff upon the issue of veracity between the parties. The suit was not brought upon the new promise, but the promise may well have been introduced as collateral evidence, touching the question of discharge, and it does not seem that such testimony was improper to be admitted.

The second and third errors assigned are that the court erred in each subdivision of his charge to the jury, and in not making his charge clear and intelligible.

Each paragraph of the charge was excepted to, as appears by the record. It cannot be expected that a charge required to be written by the Circuit Judge in the midst of the confusion of a contested trial will be as perfectly or logically framed as though it was prepared under more favorable circumstances. Hence in this, as in many cases, the charge is not framed with that precision which might be expected if time or opportunity had been had to perfect it. We do not discover, however, that anything contained in the first three paragaaphs excepted to could have misled the jury. The fourth paragraph of the charge, however, may have influenced the jury unfavorably to the defendant. It is in these words : " If you find that plaintiff did not authorize his agent *to make* the agreement, and that if agent paid over the amounts on his own responsibilily, it does not bind the plaintiff." Now, it is well understood that an agent may exceed his authority, so that his principal will not be bound by his acts ; but if the principal afterwards acquiesce and accept the results and benefits of the unauthorized act, having knowledge of the facts, the act of the agent becomes the act of the principal by such ratification. One of the matters in issue in the case at bar was whether a new and valid agreement was made by the plaintiff (or ratified by him, and thus becoming his own act,) for the giving of time to the acceptor without the knowledge and consent of the defendant ; that time was so given for payment to the acceptor, and that before payment was made in full by the acceptor, and after the agreement was entered into, the acceptor became insolvent, by reason of which delay of the plaintiff the defendant is affected to his damage. This is a good plea in bar, and it is so conceded by the court in the first paragraph of the charge.

If, then, the agent of the holder, without the consent of the endorser, made an agreement with the acceptor, by which agreement, and resulting from it, the endorser has been embarrassed or has lost the means of indemnifying himself,

the acceptor becoming insolvent in the meantime, and the principal has ratified the agreement, directly or indirectly, without the consent of the endorser, it *does* " bind the plaintiff" in his suit against the endorser. These matters of fact are for the jury to determine, and their field should not be so circumscribed as to confine their inquiry merely, upon this branch of the case, to the original authority of the agent to enter into the agreement, and exclude the farther question as to the ratification by the plaintiff of the contract. We do not think the terms of the agreement are very clearly shown by the testimony contained in the record, and perhaps if the charge of the court had been more full and explicit, the result might have been the same; but because the jury may have been misled by the too brief and general charge in this particular, it is erroneous. Hilliard on New Trials, 45 ; 1 Cal. R. 353 ; 11 Pick. 140 ; 22 Texas, 708 ; 8 Georgia, 695.

The law applicable to the case at bar, (as we understand the case,) is that laid down by writers. If, after a bill or note becomes due, the holder, for adequate consideration, agrees with the drawee of the bill or maker of the note to give him time for payment, without the concurrence of the other parties entitled to sue such drawee or maker, they will thereby, in general, be discharged from all liability, although the holder may have given notice of non-payment. Story on Prom. Notes. § 413, *et seq.* ; Chitty on Bills, 408. And if without such a consideration he take fresh security, as a renewed bill, or a *cognovit* or warrant of attorney, and also agrees to give time, he thereby discharges the drawee and endorser. It is said, however, that the merely taking fresh security payable at a future day, but without a bargain to give time, will not discharge its drawer, it appearing that the second security was taken only as a collateral. Story Prom. Notes, § 416 ; Chitty, 409 and cases cited. But it is admitted that the mere receiving *further security*, payable at a future day, would, in general, imply an engagement to wait till it be-

comes due. There is no obligation of active diligence on the part of the holder to sue the acceptor or any other party, and he may be passive and forbear to sue as long as he chooses; but he must not so agree to give time to the acceptor as to preclude himself from suing him, and suspend his remedy against him in prejudice of the drawer and endorsers. Story Prom. Notes, §§ 414, 419 and cases cited. In Gould vs. Robson, 8 East, 576, the holder of a bill upon its becoming due received part payment of the acceptor and took a new bill from him at a future short date for the remainder, and agreed to keep the original bill in his hands as security. He now sued the defendant as endorser, and this was relied on as a defence. Lord Ellenborough said: "How can a man be said not to be injured if his means of suing be abridged by the act of another? If the plaintiffs, holders of the bill, had called immediately upon the defendant for payment as soon as the bill was dishonored, they might immediately have sued the acceptor and the other parties on the bill. The holder has the dominion of the bill at the time; he may make what arrangements he pleases with the acceptor, but he does that at his peril. If he thereby alter the situation of any other party on the bill to the prejudice of that person, he cannot afterwards proceed against him. As to the taking part payment, no person can object to it, because it is in aid of all the others who are liable; but here he did something more—he took a new bill from the acceptor and was to keep the original until the other was paid. This is an agreement that in the meantime the original bill should not be enforced; such at least is the effect of the agreement, and therefore I think time was given." The agreement to give time must be made with a party to the bill, or it will not operate as a discharge of any.

An agreement between the creditor and the principal debtor for delay, or otherwise changing the nature of the contract to the prejudice of the surety, in order to discharge the latter, must be made upon sufficient consideration, and

binding in law upon the parties. A mere agreement by the holder with the drawee for delay, *without consideration,* though without any communication with or assent of the endorser, will not discharge the latter after his responsibility has been fixed by due notice of dishonor. McLemore vs. Powell, 12 Wheat. 554; Badnall vs. Samuel, 3 Price, 521; Eng. Exch. R. Vol. 1. So it seems that a surety will not be discharged *by the agreement* to give time, and thus vary the terms of the original promise, unless there be a consideration which will entitle the primary debtor to insist upon and enforce the agreement, and the agreement must also be made without the assent of the surety or endorser.

Whether the holder of the draft in question made or assented to the agreement set up in this case; whether he received any consideration for such agreement; whether the defendant knew of or assented to the agreement if made; whether the agent who entered into it was authorized by the plaintiff to enter into it, or whether, for the purposes of procuring and enforcing the judgment taken in New York and the terms agreed upon for the payment of it, the agent there was the agent of the plaintiff or of the defendant, or of neither of them; whether the agreement was at any time binding upon either party, are questions to be determined by the jury, under instructions from the court upon the law of the case.

The fourth error assigned is that the court erroneously instructed the jury at the request of plaintiff's attorney, especially in giving the third and fifth subdivisions of the instructions asked for, and the fifth and sixth errors assigned relate to the refusal of the court to give all and each of the instructions prayed for by defendant's counsel, (numbered 1 to 13.)

The eighth assignment of error reads as follows: The court erred in not declaring in writing his ruling upon the instructions asked for by the defendant as presented, and in not marking them " given " or " refused."

We are compelled to remark here that in reference to the several instructions presented in writing by the respective counsel, if this record is perfect, the Circuit Judge failed to observe the provisions of " An act to amend the several acts relating to judicial proceedings," approved January 3, 1848, being Chapter 140 of the laws of 1847–8. The second, third and fourth sections read as follows :

" Sec. 2. Upon the presentment to the said Judge, by either of the parties or their attorneys, of instructions in writing, on the point or points of law or exceptions taken, arising on the trial, it shall be the duty of the said judge to declare, *in writing, his ruling thereupon, as presented,* and pronounce the same to the jury as *given or refused.*

" Sec. 3. That it shall be the duty of the said judge, in any case, when he shall refuse to give the instructions, or any one of them prayed for, as prayed to be given, to write out and declare to the jury by way of instructions his own ruling of law upon the point or points so raised or presented, all of which shall be in writing, and shall be written out before the same are delivered.

" Sec. 4. That all instructions, as well those given as those denied, and also as well those prayed for by the parties as those declared by the said judge, shall be signed and sealed by the said judge, and form a part of the record in the case."

The certificate appended to the record states that it is a true copy of the papers and records on file, &c. The body of the record shows that instructions (copied at length) were prayed by the counsel on both sides, and they are quite voluminous. Appended to many of them in the bill of exceptions is this entry : " Refused as asked for, but read with the words within the brackets interlined. To which refusal to give said instructions and to interlining the same, defendant then and there by his counsel excepts." Upon several of the instructions prayed, there is no memorandum showing that they were noticed or ruled upon at all by the judge.

Fridenberg v. Robinson.

The defendant excepts to the giving of several instructions asked by plaintiff's counsel, but there is no memorandum of the judge showing whether any of them were given; and it does not appear that the judge signed and sealed the charge, or any of the instructions prayed with his ruling thereon. This law of 1848 means something or nothing. If the instructions here incorporated were presented in writing to the judge, we are entitled to know what ruling was made thereon and what instructions were given thereon to the jury, and strictly we can properly know this only by the means provided by law. If they were not so presented, we cannot regard them, but they may be treated as interpolations. The bill of exceptions as signed by the judge shows that they were presented to him. The counsel and parties are interested in having the rulings of the court, as given, reviewed for the purpose of correcting material errors, and the Circuit Judge is required to write out his rulings upon each question presented, so that the exact ruling may be seen and that it may be known what portion of the paper presented is his ruling. The parties may justly complain if this is omitted, and the counsel here insists upon the strict application of the law. The question was presented to the Circuit Court upon the motion for a new trial by the defendant, which motion was overruled, thus showing that the court did not deem it essential to comply with the statute in question, and an exception was taken and noted in the record, so that the decision upon the point comes properly before the court for review. We have on several occasions passed upon cases presented, where a similar omission appeared, but, except in a single instance, no question has been raised upon it. But we are met here by the objection, and can only obey the positive requirement of the statute. For these errors, apparent in the record, the judgment must be reversed and a new trial granted.