**FIRST BANK OF MARIANNA, FLA., v. PINCKNEY.**

**In re BEALL'S ESTATE.**

No. 10709.

Circuit Court of Appeals, Fifth Circuit.

Jan. 5, 1944.

Giles J. Patterson, of Jacksonville, Fla., and Thomas Sale, of Panama City, Fla., for appellant.

Millard F. Caldwell, B. A. Meginniss, Julius F. Parker, and Leo L. Foster, all of Tallahassee, Fla., for appellee.

Before HUTCHESON and HOLMES, Circuit Judges, and RUSSELL, District Judge.

RUSSELL, District Judge.

This appeal involves the correctness of a decision of the trial Judge, reversing an order of the Referee in Bankruptcy which vacated a turn over order issued upon the petition of the Trustee in Bankruptcy of L. H. Beall, and requiring the First Bank of Marianna, Florida, appellant, to turn over to the Trustee in Bankruptcy $3,500 which had been paid to it by the executors of the estate of W. W. Beall. The executors were the brothers of the bankrupt and serving under a will which did not require the making of returns or the giving of any bond. The trial Judge, upon a review of the record, set aside the finding of the Referee, and it is this ruling of which the appellant complains, asserting the case was not one properly within the summary jurisdiction of the Court of Bankruptcy, and furthermore, that the judgment was erroneous under the facts because it appeared that the payment of the $3,500 was made in discharge of a note of which the

bankrupt was maker and W. W. Beall was endorser.

The petition of the Trustee for a turn over order alleged that at the time the petition in bankruptcy was filed the executors of W. W. Beall had in their hands assets in excess of $4,000 which belonged to, and were held by them to the credit of, L. H. Beall, as a legatee and devisee under the will of his father, W. W. Beall, deceased, and notwithstanding that such assets were in custodia legis the executors paid to the First Bank of Marianna the sum of $3500. The answer of the defendants denied that the money paid to it "represented any funds belonging to said bankrupt", and asserted that the payment was made to discharge an obligation of W. W. Beall by reason of "decedent's endorsement of the note given by L. H. Beall to the bank", dated May 23, 1940, for the sum of $5,000. The Referee overruled a timely motion to dismiss the petition upon the ground that it concerned a matter not within the summary jurisdiction of the Court. Upon the hearing, it appeared that the history of the note transaction was, that the original endorsed note was renewed and reendorsed on August 22 and November 23, 1940, and again on February 17, 1941, but this renewal was not endorsed. The note was again renewed on May 19th, and August 16, 1941, and endorsed on each occasion. In October, 1941, W. W. Beall died. On November 18, 1941, L. H. Beall paid the bank one thousand dollars and delivered to it a renewal note for four thousand dollars due February 11, 1942, and on that date L. H. Beall paid the bank the sum of $500 and executed a renewal note in the amount of $3,500 due May 12, 1942. Both last mentioned renewals were subsequent to the death of W. W. Beall. During the course of the transaction the bank had retained possession of the original note and of each subsequent renewal. On May 20 1941, after the due date of the last note, but after the filing of the involuntary petition in bankruptcy in which the bank joined, a discussion was had between the officers of the bank and the executors, and the executors gave to the bank a check drawn on the estate account in the amount of $3,500 and received from the bank a transfer without recourse of all of the notes theretofore held by the bank. Evidence was further introduced that in response to a petition filed by the receiver of the bankrupt directing the executors to report an account of their disbursements to the bankrupt and as to the condition of the estate, the executors had reported cash payments on dates between November 6, 1941, and Feberuary 17, 1942, of $15,235, followed by the statement "(May 20, 1942, Paid to First Bank of Marianna, Fla., note of L. H. Beall indorsed by W. W. Beall) 3,500.00." In the testimony with reference to this payment the executors and the bankrupt referred to these disbursements as having been made "to or for" the bankrupt. It appears that the actual condition of the estate is not clearly known in view of the possible invalidity of some charitable bequests, and unascertained inheritance taxes and legal expense, and some small debts. The $3,500 along with the cash payments was charged to the account of the bankrupt as an heir of the estate. The executors have never filed an inventory or an accounting in the probate court for the reason, as testified, the County Judge told them it was not necessary under the terms of the will.

The trial Judge concluded that upon the facts and the applicable law the bank should be required to turn over the $3,500 payment received. He found that it was clear from the evidence that the executors paid the bankrupt's claim with monies of the estate in their hands and on behalf of the bankrupt; that the testimony of the president of the bank, a petitioning creditor, that because of the endorsement of the decedent appearing on prior notes the estate was obligated to pay the last note though not endorsed, was not good as a matter of law, and the testimony that it relied upon the signature of the endorser rather than the maker was entitled to but "little credence" in view of the allegations of its petition in bankruptcy, and that as the estate was not liable upon the note under the whole facts it was clear that the bank had no right to thus deplete the bankrupt's estate to the prejudice of the creditors. He considered the payment under the applicable law and circumstances as a recognition by the executors that the funds paid were a part of the share of the bankrupt in his father's estate.

■ The subject matter of the controversy was within the summary jurisdiction of the court of bankruptcy. Nothing appeared either from the pleadings or the testimony which entitled the appellant to have the controversy adjudicated in a

plenary suit. It had received the $3,500 after the involuntary petition in bankruptcy in which, predicating its claim upon the note discharged by the payment, it had joined as a petitioning creditor. Regardless of the technical sufficiency of some of the allegations of the petition for a turn over order, when the Referee proceeded, as was legally his right to do, to examine into the facts of the transaction, it became clear that the substantial question at issue was whether the payment was of a debt of the bankrupt or a debt of the estate. A payment undoubtedly had been made, and it was the duty of the court of bankruptcy to inquire as to how and for what purpose it had been made. Payments made to a creditor by the bankrupt after the filing of a petition may be required to be turned over by summary order.[1] This rule has been further recognized in May v. Henderson, 268 U.S. 111, 45 S.Ct. 456, 459, 69 L.Ed. 870, which holds that an assignee under an assignment made within four months of bankruptcy is subject to the summary jurisdiction of the bankruptcy court in a proceeding to require the turn over of property held by others for the bankrupt's account and further, that "any person acquiring an interest in property of the bankrupt * * * adverse to the creditors after the filing of a petition with notice of it, may be directed to surrender the property thus acquired by summary order of the bankruptcy court. * * * The rule is the same when a creditor secures payment of his debt from the bankrupt's estate after the filing of the petition. A summary order may be made directing repayment of the money to the trustee in bankruptcy." In that case the Supreme Court cites In re Leigh, D. C., 208 F. 486, 488, which is exactly in point with the present case to the extent that the party receiving payment after bankruptcy was a petitioning creditor and it was therefore deemed "clear that a summary proceeding was proper". The summary jurisdiction of the bankruptcy court to inquire into the actual facts of the case and determine the character of the payment made is thus well established, whether a payment is claimed to have been made by, or on account of, the bankrupt.

The Court having jurisdiction to hear and determine, the remaining question is whether the determination was correct. As to the legal question involved, and argued here, that the estate was liable upon the $3,500 nonendorsed note by reason of the endorsement of the decedent upon the prior notes, the Florida decisions amply sustain the ruling of the trial Judge that the part payments to, and acceptance by, the bank of the renewal notes operated as a release of the endorser. The Florida cases make a clear distinction between the effect of an extension of time for payment granted the maker without the consent of the endorser, and the effect of the taking of a new note without such consent. In the former instance there must be an "adequate" consideration, while in the latter the taking of a new note is itself sufficient to discharge the endorser from liability.[2] This rule is predicated upon the principle that in case of a mere agreement to extend the time of payment, without consideration, there is no binding agreement, but the effect of the acceptance of renewal notes is to postpone the original date and extend the time of payment until the maturity of the note.[3] This is further ruled in effect by the decision in Williams v. Peninsular Grocery Co., 73 Fla. 937, 956, 75 So. 517.[4] It thus appears that the estate of W. W. Beall was not legally liable for payment of the $3,500 note which the executors discharged, and consequently the fact of such payment, and its effect, was entitled to the preponderating evidential effect given it by the trial Judge, and, in connection with the other facts in the record, amply sustain his ruling.

Appellant complains that the turn over order is inequitable for the reason that it now has no recourse against the estate because of the lapse of the eight months period for filing claims provided by the Florida statute. The answer is that under the Florida law the appellant itself destroyed its right of recovery against the estate by accepting the renewal

---

[1] In re Walker Grain Co., 5 Cir., 295 F. 120; In re Long, 5 Cir., 250 F. 983; In re R. & W. Skirt Co., 2 Cir., 222 F. 256; In re Times Square Auto Supply Co., 2 Cir., 47 F.2d 210.

[2] Fridenberg v. Robinson, 14 Fla. 130 (3), 142.

[3] Frank Herman & Co. v. Williams, 36 Fla. 136, 18 So. 351.

[4] See also Fort Pierce Bank & Trust Co. v. Sewall, 113 Fla. 811, 814, 152 So. 617; Section 675.28, Florida Statutes 1941, F.S.A.

notes under the circumstances here disclosed as ruled by the above authorities, and the effect of any bar by the non claim statute is not here material and requires no determination.

The judgment of the trial Judge is supported by the facts and the law, and is affirmed.