Frank M. CHICHESTER, Trustee in Bankruptcy for the Estate of Kenneth P. Schmidt Builders, Inc., Bankrupt, Appellant,

v.

Clarence E. POLIKOWSKY, Winnifred Polikowsky, Kenneth P. Schmidt and Mary Wilkins Schmidt, Appellees.

No. 14606.

United States Court of Appeals
Ninth Circuit.

Sept. 30, 1955.

Craig, Weller & Laugharn, C. E. H. McDonnell, Frank C. Weller, Thomas S. Tobin, Los Angeles, Cal., for appellant.

Blanche & Fueller, John K. Blanche, Pasadena, Cal., Lawrence M. Cahill, Los Angeles, Cal., for appellees.

Before FEE and CHAMBERS, Circuit Judges, and TAYLOR, District Judge.

JAMES ALGER FEE, Circuit Judge.

Based upon an involuntary petition in bankruptcy, an order was entered on December 7, 1953, adjudging Kenneth P. Schmidt Builders, Inc., a corporation, bankrupt. At the time of the filing of the petition and at the date of the adjudication, clear legal title to a piece of real property stood in the name of the bankrupt corporation. Through their attorney, Chester E. Polikowsky and Winnifred Polikowsky filed a petition for an order to show cause directed to Kenneth P. Schmidt and Mary Wilkins Schmidt, the bankrupt corporation and the Trustee in Bankruptcy, requiring them to show cause why a vendor's lien should not be impressed upon the real property so standing in the name of the bankrupt. Each of these parties so summoned answered and denied the existence of any vendor's lien, claiming that the title was in the bankrupt corporation free and clear of encumbrances.

The Referee in Bankruptcy denied the petition and found generally the facts which are set forth below. The bankrupt was engaged in the business of constructing homes on building tracts and selling these to the public. Kenneth P. Schmidt owned or controlled practically all of the capital stock of this corporation and was its president. Mary Wilkins Schmidt is his wife. The Polikowskys had listed this real property here involved for sale with a real estate broker, who contacted Schmidt with reference thereto. The latter had never met or dealt with the Polikowskys, and all negotiations for the sale were conducted by the broker. The original escrow instructions provided for completion bonds for the houses to be built on this real estate by the bankrupt with bonds to guarantee completion of street and utility improvements. The bankrupt was unable to furnish completion bonds. Therefore, the escrow instructions of October 30, 1952, eliminated this provision.

These original escrow instructions were delivered to a loan association for the sale of this realty by the Polikowskys to bankrupt for $20,000.00. It was specifically provided that a policy of title insurance should be obtained showing title vested in the bankrupt free of encumbrances except certain specified taxes and special district levies. These instructions provided that a note for the purchase price and a deed of trust securing payment thereof were to be executed to the Polikowskys by the bankrupt and Kenneth P. Schmidt personally. The trust deed was to be subordinated to the lien of certain construction loans to be incurred by bankrupt. Kenneth P. Schmidt, after these original instructions were signed, asked the real estate broker to obtain the amendment of these instructions by deleting the provision for the subordinated deed of trust in order that the bankrupt corporation would get clear title to the property. He offered in return that he and his wife would personally execute the note for the purchase price. Because of certain conditions that had arisen, it was clear that the deal had to be handled in this way or be cancelled. The Polikowskys agreed. Amended instructions were prepared and signed on December 5, 1952. The deed of trust provision in favor of the Polikowskys was omitted. It was provided that the

purchase money note should be signed individually by Kenneth P. Schmidt and his wife.

Pursuant to the original and amended escrow instructions, a promissory note for $20,000.00 was executed and delivered to the petitioners, the Polikowskys, by the bankrupt and by the Schmidts as co-signers. The Polikowskys executed and delivered a deed to this real property vesting the title in the bankrupt corporation. The deed recited that the property is subject only to covenants, conditions, restrictions, reservations, rights of way and easements now of record, if any.

The note has never been paid. Title to the property vested in the bankrupt. The trustee now holds this title by operation of law.

The Polikowskys knew that the purpose of the bankrupt in purchasing the property was to erect homes thereon to be sold to the public. They also knew that the bankrupt proposed to operate by placing constructions loans on the realty. This purpose is shown by the original escrow instructions, which directly refer to these loans and which were not amended as to this feature.

Upon review, the District Court reversed the Referee. He entered a judgment reciting that Kenneth P. Schmidt Builders, Inc., the bankrupt, has no right, title or interest in or to the property; that the purchasers of this real property are Kenneth P. Schmidt and Mary Wilkins Schmidt. It was also adjudicated that the Polikowskys are authorized to bring suit in the state courts "for the purpose of imposing their vendor's lien, if any they have." It was further adjudicated that Kenneth P. Schmidt and Mary Wilkins Schmidt are not in bankruptcy and the trial court has no jurisdiction to determine the validity of the vendor's lien as against Kenneth P. Schmidt and Mary Wilkins Schmidt.

The District Court was in error in indicating that it had no jurisdiction of the real property or of the alleged lien. It is familiar law that, where a bankrupt has property standing in its name or in its possession at the time of the filing of the petition in bankruptcy, the court of bankruptcy has exclusive jurisdiction thereover, and, no matter how many times the property has been attempted to be transferred or subjected to lien, the fact of title in the bankrupt at that time gives jurisdiction of the property. It was therefore of no consequence whatsoever that the Kenneth Schmidts were not themselves in bankruptcy. The legal title did not stand in them. If they had any equitable title, which they denied, that was subject to the summary jurisdiction of the bankruptcy court. It is true that that tribunal could have consented to the adjudication of such a matter in the state court. If the bankrupt, or rather the trustee, had brought plenary suit in the state courts to clear the title, then the adjudication of those courts would necessarily be binding. But the court would have to consent to a suit by the trustee in the state court.

Upon the filing of the petition by the Polikowskys, the Referee became vested with jurisdiction over the alleged claim on their part for the real property to which the bankrupt had title and which was in the possession of the trustee. The Referee also had jurisdiction of the person of the Polikowskys by reason of their consent conferred by the filing of the petition. It is doubtful that the Referee could have obtained jurisdiction over Kenneth P. Schmidt or Mary Wilkins Schmidt. However, each of these persons voluntarily appeared and filed an answer. They thereby waived their right to refuse to appear in the matter. The Referee was vested with jurisdiction over each of these persons insofar as any claim they might have had to the real property. Each of these persons, however, answered disavowing any claim for the real property either for themselves or for the Polikowskys.

The Referee thus had complete jurisdiction and power to dispose of the matter by appropriate findings and order. The findings of the Referee were not

clearly erroneous, but well founded in the evidence. He was therefore justified in his conclusion.

It would be completely improper for a court to permit this corporation to receive the title to this property and to operate thereunder and receive credit from other persons based upon the strength of its ownership and possession of this real property and subsequently allow the Polikowskys to claim that they did not intend to transfer it to the bankrupt corporation but to the Schmidts personally. The Polikowskys should not be permitted to stand as a preferred creditor of the bankrupt corporation when the history of the whole deal shows quite clearly that they knew that all security was being waived so far as the bankrupt was concerned and that they were required to rely upon the personal responsibility of Kenneth P. Schmidt and his wife.

The Polikowskys raised the question that the corporate veil should be pierced in view of the fact that Kenneth P. Schmidt was practically the owner. California is in accord with the general rule that such a result will only be permitted by the court to prevent inequity, fraud or injustice. It is not to be done where there is simply a showing of complete ownership of the stock of the corporation by one individual. There is not a scintilla of evidence that Kenneth P. Schmidt organized, or had used, this corporation as a mask in order to permit him to accomplish any such untoward purposes. The Referee made this apposite finding:

"At none of the time herein mentioned was the bankrupt corporation used or intended to be used by the said Kenneth P. Schmidt as his alter ego or as a device to perpetrate any fraud, injustice or inequity."

The Referee also found:

"The purchaser of the real property involved herein is Kenneth P. Schmidt Builders, Inc., the bankrupt corporation, and the signatures of Kenneth P. Schmidt and Mary Wilkins Schmidt, individually, appear as co-makers on the note given by the corporation in consideration of the transfer of the said real property."

Each of these findings was correct, was supported by the evidence and was not erroneous. The District Court should therefore have upheld these findings rather than attempting to set them side. The findings and conclusions of the Referee should have been affirmed.

The judgment of the District Court is reversed and the cause remanded for further proceedings in accordance with this opinion.