In the Matter of William Herman
RIPP, Bankrupt.

Gregory H. RIPP, Appellant,

v.

Gene J. FLEMING, Receiver, and Carl
J. Flom, Trustee, Appellees.

No. 11780.

United States Court of Appeals
Seventh Circuit.

March 25, 1957.

Rehearing Denied April 24, 1957.

Charles F. Gilkeson, Richard R. Rynders, Madison, Wis., for appellant.

Gene J. Fleming, Frank A. Ross, Jr., Madison, Wis., for appellees.

Before FINNEGAN, LINDLEY and SCHNACKENBERG, Circuit Judges.

LINDLEY, Circuit Judge.

Gregory Ripp appeals from a judgment of the district court entered in a show cause proceeding in the bankruptcy case of William H. Ripp, declaring chattel mortgages given by the bankrupt to appellant, his brother, invalid and ordering the property which they purported to cover sold free and clear of liens and the liens, if any, transferred to the proceeds of sale.

William Ripp was adjudicated bankrupt upon his voluntary petition on February 18, 1955. The record discloses that a hearing was held before the referee, to whom the cause had been referred, on May 20, 1955, but does not tell us what transpired at that time. However, on that day, the referee ordered appellant and the bankrupt to show cause, if any they had, on the 27th day of May, 1955, why the chattel mortgages given by William Ripp to Gregory Ripp should not be held null and void. Apparently, this unreported hearing of May 20, upon which the show cause order was based, was attended by the trustee and various creditors, and, in pursuance thereof, one Fleming, receiver in a judgment creditors' supplemental proceeding in the state court against William Ripp, filed objections to the validity of the mortgage then in existence, contending that it was in violation of the Wisconsin Bulk Sales Law, did not conform to the requirements of the state statutes, and was fraudulent and void as against then existing creditors of the bankrupt, and praying that, upon the hearing on the order to show cause, the mortgage be held void and of no effect.

At the hearing on May 27, 1955, those appearing before the referee included the trustee in bankruptcy, the bankrupt and his attorney, the appellant, Fleming, the state court receiver, McDermott, Assistant U. S. Attorney representing the Government's tax claim, and two attorneys for other creditors. The court, with the parties represented, thereupon proceeded with the hearing upon the question of validity of the mortgage. No objection to this procedure was raised by anyone.

The evidence taken shows that on October 5, 1951, the bankrupt mortgaged to appellant, his brother, personal property in his tavern in Madison, for the purpose of securing $9,500 represented by a note due September 27, 1957; that, on October 9, 1954, a second mortgage was executed by William Ripp to appellant

to secure the same sum, which was recorded October 11, 1954, two days before Fleming was appointed receiver in the state court. Prior to the filing of this mortgage, however, on August 27, 1954, an order had been entered in the state court enjoining William Ripp from making any transfer or other disposition of his property and, on the 17th day of September, 1954, the sheriff served the injunction writ upon William.

The evidence included also the oral testimony of Fleming, the state receiver, the bankrupt, the mortgagee, appellant herein, and one Goodwin called by the mortgagee. Upon conclusion of the evidence the referee indicated that he would hold the mortgage invalid as against the trustee, and asked the parties to present suggested findings and conclusions of law.

Up to this time the trustee had filed no pleading, but the report of the referee filed upon review recites that the trustee had joined in objections made by the creditors to the validity of the mortgage orally. Whether this was done at the original hearing on May 20, of which there is no transcript, or on May 27, is not clear, but, at any rate, after the referee had indicated that his decision would be against validity, the trustee, on July 19, filed written objections to the lien averring that each of the mortgages was invalid for various reasons, including the suggestion that the second mortgage was of no avail because no affidavit of renewal of the original mortgage had been filed in accord with Wisconsin Statute, Sec. 241.11, and because it was in violation of the Bulk Sales Law of Wisconsin, Sec. 241.18 through 241.21 of the Wisconsin statutes. At any rate, the referee's final order was not entered until December 7, 1955, almost five months after the trustee had presented formally, his opposition to the validity of the mortgages.

After the pleading of the trustee was filed, no further proceedings were requested or had, other than a hearing upon proposed findings of fact and conclusions of law, held October 11, 1955.

On December 7, 1955, the referee entered his formal order, including findings of fact and conclusions of law. He found the first mortgage invalid as against creditors after expiration of three years, inasmuch as the attempted renewal had not been made in conformity with the statutes. He found also that no notice had been given to creditors of the transfer, as required by the Bulk Sales Law of Wisconsin; that appellant had no knowledge of the execution of the second mortgage until after it was delivered to him after being filed, that it was without valid consideration, and that the mortgagee had been ordered to produce all his records, bills, and documents relating to the mortgage and had failed to do so or to comply in any way with the order. He found also that the evidence was insufficient to enable him to determine any amount due the mortgagee.

On the same day, the referee entered an order that the trustee sell the mortgaged property, and that the liens of secured creditors, if any, including the alleged tax lien of the United States, attach to the proceeds of sale.

Upon review of these orders, on March 24, 1956, the district court approved the findings of fact and conclusions of law of the referee, and held the mortgages invalid and the property described therein free of each of them and ordered it sold free of liens, as the referee had directed. It is to review this order that this appeal is prosecuted.

■ The record is fragmentary and confused. It does not show what occurred at the original hearing of May 20, 1955, or include the schedules of the bankrupt or any evidence upon which the referee may have relied, other than what was submitted on May 27. In the absence of the production of all the evidence, under well-known rules, we must presume that the unreported evidence was sufficient to sustain the judgment. However, in view of the contentions of the respective parties, we think it well to discuss briefly the merits.

852

As we understand appellant's contentions, in his petition for review, he raised the question of jurisdiction for the first time. He insists here, that the court was without jurisdiction to enter the order of which complaint is made, for the reasons, first, that the issue should have been raised in a plenary suit and not summarily; and, second, that, upon the merits, the court was in error in finding the liens invalid upon any ground and in ordering a sale free of liens.

■■ Under Sec. 70 of the Bankruptcy Act, 11 U.S.C.A. § 110, subsection a, the trustee is vested with the title of the bankrupt to all property which prior to bankruptcy might have been levied upon and sold under judicial process against him, and under subsection c, with "all the rights, remedies, and powers of a creditor then holding a lien * * * whether or not such a creditor actually exists." All property under the bankrupt's control or in his possession, passes to his trustee in bankruptcy. From the time of the filing of the petition, the assets are in *custodia legis* and over them the bankruptcy court has exclusive jurisdiction and the sole right to determine the validity of any and all alleged liens thereon. Isaacs v. Hobbs Tie & Timber Co., 282 U.S. 734, 51 S.Ct. 270, 75 L.Ed. 645; Irving Trust Co. v. Fleming, 4 Cir., 73 F.2d 423. Summary proceedings are available unless the property has passed into the possession of third persons claiming adverse title. In re 671 Prospect Avenue Holding Corp., 2 Cir., 118 F.2d 453. Persons claiming liens may be brought in by a show cause order. Sampsell v. Imperial Paint & Color Corp., 313 U.S. 215, 61 S.Ct. 904, 85 L.Ed. 1293; First Bank of Marianna, Florida v. Pinckney, 5 Cir., 139 F.2d 575; In re Knott, 6 Cir., 134 F.2d 833. And a plenary suit is not necessary. Hebert v. Crawford, 228 U.S. 204, 33 S.Ct. 484, 57 L.Ed. 800; White v. Barnard, 1 Cir., 29 F.2d 510. Whether the creditor has filed a secured claim is wholly immaterial. An alleged lienholder must respond to a show cause or-

der or default. If he appears, the burden is upon him to prove his lien. Sec. 70, sub. d(5), 11 U.S.C.A. § 110.

■■ So here, when the trustee in bankruptcy was appointed, his title to all assets in the bankrupt's custody, possession or control passed to him; and, in addition, he was vested with all the rights of judgment creditors armed with execution liens. The court thereby obtained jurisdiction of the *rem*, exclusive custody over it. It alone had jurisdiction to draw unto itself the claims of all parties in interest therein by show cause order requiring the alleged lienees to show whether their claims were valid. Chichester v. Polikowsky, 9 Cir., 231 F. 2d 183.

■ It should be observed further that, even had the mortgagee been entitled to object to summary jurisdiction, he waived such right by appearing and presenting the merits of his alleged lien to the referee for disposition in pursuance of the show cause order without objecting to summary jurisdiction. After the order had been entered, he did object to such jurisdiction, but this was too late. His waiver had long been effective. Fairbanks Steam Shovel Co. v. Wills, 240 U.S. 642, 36 S.Ct. 466, 60 L.Ed. 841; In re Realty Associates Securities Corp., 2 Cir., 98 F.2d 722, certiorari denied Wohl v. Realty Associates Securities Corp., 305 U.S. 656, 59 S.Ct. 252, 83 L. Ed. 425.

■ After defining the limitations and restrictions upon chattel mortgages in Sec. 241.08 of the Wisconsin statutes, the Act further provides in Sec. 241.11, that any chattel mortgage filed as required by Sec. 241.08 shall cease to be valid as against creditors of the mortgagor or as against subsequent creditors after expiration of three years from the filing of the same. The statute proceeds: "The validity of the filing may in each case be extended for successive additional periods of one year from the date of filing the affidavit, by filing with the register of deeds *within 30 days next preceding the expiration of each period,*

*an affidavit made* by the mortgagee, his agent or attorney, setting forth the interest which the mortgagee has by virtue of such mortgage in the property therein mentioned. Such affidavit shall be filed and entered in the same manner as a chattel mortgage filed and entered for the first time, and the register of deeds shall be entitled to a like fee as upon the original filing." (Emphasis supplied.) Under this statute the first mortgage became invalid as against judgment creditors at the end of three years, inasmuch as the second mortgage had not been filed within the time prescribed for extending the lien of the first mortgage. Consequently, at the time the second mortgage was executed, the first mortgage was invalid as to creditors armed with executions and, from that time on, no lien in favor of the mortgagee as against judgment creditors, including the trustee, existed, unless the lien of the second mortgage was valid. Consequently, at the time when the second mortgage was executed, the indebtedness which it was given to secure was unsecured as against judgment creditors by reason of the statute's mandate to that effect and the only consideration for the second mortgage was a past due unsecured indebtedness. Under the statute it was wholly ineffective to achieve the purpose for which it was executed, namely, renewal of the first mortgage. Under the Wisconsin law, therefore, it was from its inception invalid as against judgment creditors, including the trustee, when appointed.

Furthermore, we must keep in mind the significant fact that prior to the time when the second mortgage was executed, the mortgagor, in a creditors' suit in the state court, had been enjoined from transferring any of his property. That restraint, obtained by creditors, redounded to and became a part of the trustee's title when bankruptcy intervened. The bankruptcy court, with its paramount jurisdiction under the Constitution, superseded the state court's jurisdiction, with full right, however, to enforce the rights obtained by creditors prior to bankruptcy and still in existence.

In this connection appellant argues that, in order to invalidate this lien, it was essential that there be a creditor who had actually levied an execution upon the mortgaged property, and that, otherwise, its invalidity, could not be asserted by any creditor or by the trustee. The only authority called to our attention in this respect is In re Davis Brothers Stone Co., 245 Wis. 130, 13 N.W.2d 512, 14 N.W.2d 870. However, that case does not support the argument. There the mortgage was held invalid, though the court expressly said 245 Wis. at page 137d, 14 N.W.2d at page 871: "The evidence does not show an execution levy on the property." In other words, the court held the mortgage invalid, even though no execution had been levied. See 245 Wis. at page 137, 13 N.W.2d at page 515.

We conclude, therefore, that, under the Wisconsin statute as interpreted by the Supreme Court of Wisconsin, the lien of the first mortgage expired so far as the title of the trustee is concerned, upon failure to renew it within the statutory period; that the second mortgage was invalid as a renewal of the first mortgage for the reason that it was not filed within the time prescribed by the statute, and was not in the form defined by the statute as necessary to preserve the lien; that the mortgagor was at that time enjoined from making any such transfer; and that, therefore, the lien of the second mortgage was, at all times, invalid as to judgment creditors, including the trustee in bankruptcy.

The order to sell free and clear of liens, transferring the proceeds of sale to such liens, if any existed, was well within the court's discretion. No showing of abuse of discretion is made.

Inasmuch therefore, as we are of the opinion that the referee and the court correctly held the liens of the two mortgages invalid as against judgment creditors, including the trustee, and, that,

therefore, the mortgagee must be classed as an unsecured creditor, we find it unnecessary to examine other grounds urged in support of the finding of invalidity.

The judgment is affirmed.